BERANEK, Judge.
Appellant, income beneficiary of certain shares of stock under a will, seeks reversal of an order of the Circuit Court, Probate Division, awarding certain additional shares of stock resulting from a stock split to the residuary legatee. We conclude that the trial court erred in construing the will and reverse.
Harry S. Howard died on March 17, 1976, leaving a will dated January 19, 1970. Article II of the will established a testamentary trust containing 1,000 shares of stock in American Home Products Corporation, with income to testator’s sister for her life, and thereafter the principal of the trust was to be distributed to the testator’s wife, Minerva Bitting Howard. The specific language of the will in question is as follows:
In the event that my sister, MRS. CATHARINE (sic) HOWARD SEIDEN-BERG, is living at the date of my death, I give and bequeath One Thousand (1,000) shares of the Common Stock of American Home Products Corporation, owned by me at the time of my death, to my Trustee, for the following uses and purposes:
To hold, invest and reinvest the same, to collect and receive the income therefrom, no less often than semi-annually, to my said sister, MRS. CATHARINE (sic) HOWARD SEIDENBERG, during her life. Upon the death of my said sister, my trustee shall transfer and pay over the principal of such trust to my wife, MINERVA BITTING HOWARD, or if she be not then living, to my son, HARRY S. HOWARD, JR., or if he be not then living, to the issue of my said son then living per stirpes.
When the testator executed his will on January 19, 1970, he owned 7,540 shares of stock in American Home Products Corporation. In April, 1973, the stock split three for one, increasing his holdings to 22,620 shares. No change in the will occurred after the stock split. The personal representative petitioned the Probate Court to construe Article II and instruct as to whether the testator’s sister was to receive income from 1,000 or 3,000 shares.
A hearing occurred on the petition for will construction at which no testimony was taken. The court construed the will based upon the document itself and upon the petition and answer thereto, which admitted the stock split, and the other relevant facts indicated above. The trial court’s order found in relevant part:
The issue involved is the interpretation of ARTICLE TWO of the decedent’s will providing a bequest to a trustee of “1,000 shares of Common Stock of American Home Products Corporation, owned by me at the time of my death, ...” The decedent’s will is dated January 18, (sic) 1970, the stated stock was split three for one by the said corporation on May 11, 1973, and the decedent died on March 17, 1976. The issue to resolve is whether the bequest is a general or specific devise and whether the number of shares to be held in trust is 1,000 or 3,000.
732.605 Florida Statutes provides in subsection (l)(b) that a specific devise of securities entitles the devisee to “Any additional or other securities of the same entity owned by the testator because of action initiated by the entity ... ”, thereby giving the legatee the same fractional share of the corporation as designated at the time of making the will. The court finds, however, that under the peculiar wording of ARTICLE TWO of the will the testator expressed a contrary intent by describing a general gift of corporate shares limiting the fractional share of the specified corporation as represented by 1,000 shares at the time of the testator’s death. See: 6 So.2d 274, 67 So.2d 665; and 156 So.2d 18.[1]
In concluding that the trust provisions constituted a “general gift” rather than a specific bequest, the trial court followed an approach often employed by courts in stock split situations. Although there is confusion in the precedents, the established rule *83 seems to be that a general bequest of stock does not carry with it the effects of a stock split occurring between the execution of the will and the testator’s death. On the other hand, a specific bequest of stock does carry with it the effects of a stock split occurring prior to testator’s death. In Re Vail’s Estate, supra. It is important to note, however, that these are rules of construction only, and are to be relied upon only, “when the will fails to give any sufficient indication of [testator’s] actual intent.” In Re Parker’s Estate, 110 So.2d 498, 502 (Fla. 1st DCA 1959).
The trial court relied upon the Vail, Garrison and McDougald cases, all of which enunciate the general rule that a specific bequest carries the stock split while a general bequest does not. We find this narrow application of the test overlooked the most important and crucial aspect of any will construction, which is the testator’s intent as ascertained from consideration of the entire will rather than from an isolated provision of it. Meszaros v. Holsberry, 84 So.2d 565 (Fla.1956); Morgenthaler v. First Atlantic National Bank of Daytona Beach, 80 So.2d 446 (Fla.1955). In determining the testator’s intent, numerous factors should be considered, including his situation at the time he made his will, his ties to the beneficiaries, his motives, and the influences present. Here, the absence of any testimony prevented the trial court from considering most of these factors, and the court had to discern the apparent testamentary scheme for disposition of the property from the face of the document alone. • The will shows testator attempted to provide income for life to his sister, based on the value of an asset which he specifically described as 1,000 shares of stock in a particular corporation. When he made his will, he owned a little over 7,000 shares and intended that the income from 1,000 of these shares go to his sister for life. When he died, he owned over 22,000 shares. We believe he intended that the value of the asset upon which the income was to based was to be at least equal to the value of the 1,000 shares before the split. We thus conclude, in accordance with In Re Parker’s Estate, supra, that the apparent testamentary scheme of the will was entirely consistent with income from 1,000 shares of stock of the corporation which testator then owned.
Since the stock split resulted solely in a change in form and not substance, it should not defeat the apparent testamentary scheme. See In Re Vail’s Estate, supra; In Re Parker’s Estate, supra. As the Second District stated in In Re Will of Liljegren, 298 So.2d 553, 558 (Fla. 2d DCA 1974);
A true “stock split” results in no gains for the stockholder, nor any loss, but simply a change in the form of evidence of his corporate ownership. Page on Wills, 1972-1973 Supplement, Section 39.8, contains the following relevant statement:
“Where a true stock split is involved the difficulties of apportionment between life tenant and remaindermen do not arise, and it is immaterial whether the bequest of stock was characterized as specific or general, as the legatee is entitled to the increased number of shares resulting from the split because the split does not represent a change in the proportionate ownership of the stock, but only a change in form.”
In support of this statement the case of In re Helfman’s Estate, 193 Cal.App.2d 652, 14 Cal.Rptr. 482, is cited. Language quite similar to this is contained in the decisions of the Supreme Court of Florida in the case of In re Vail’s Estate, 67 So.2d 665, and of the District Court of Appeals, 2nd District in the case of Pentland v. Pentland, 113 So.2d 872.
Regarding specific versus general, we adopt the Second District’s view in Parker, supra, 504:
Under authorities of ancient origin a literal interpretation of the bequests here considered would indicate that it is general in character. Under all the facts reflected by this record and considering the apparent scheme of testamentary disposition adopted by the testator with respect to his testamentary estate, there is respectable authority for the view that it *84 was the intent that the bequest be specific. For the purpose of our decision, however, it is immaterial in which category the bequest may fall. We are convinced that the stock split which occurred as a result of corporate reorganization after execution of testator’s will, but before his death, effected a change only in the form of the shares of stock, and not in their substance. (Emphasis supplied.)
Similarly, we conclude that the technicalities of specific versus general are immaterial. We hold the trial court erred in taking the narrow view and in confining consideration solely to the question of whether the bequest was specific or general in the classic and technical sense. The order construing the will is reversed and the matter is remanded with directions for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE and HURLEY, JJ., concur.

. In Re McDougald’s Estate, 149 Fla. 468, 6 So.2d 274 (1942); In Re Vail’s Estate, 67 So.2d 665 (Fla. 1953); and In Re Garrison’s Estate, 156 So.2d 18 (Fla. 1st DCA 1963).